## ROBERT O. PENNEWILL *vs.* JOHN W. CULLEN.

What constitutes a common carrier.

That is a question of law.

A common carrier is an insurer, except for inevitable accident; war; or the default of the bailor.

What is a private carrier.

His obligation is to use ordinary care and diligence to prevent accident.

THIS was an action on the case for damage done to a cargo of

corn freighted by the plaintiff, on board of defendant's sloop, the "Three Sisters," from Dover landing to New York. The declaration was against the defendant, as a common carrier; with counts charging him as a private carrier, or bailee.

The defendant was the owner of a new vessel, the "Three Sisters," which had been employed generally in carrying coal by contract, from one person in Philadelphia to New York, and returning to Little Creek, with lime to the defendant. She had once carried by contract a load of grain from Little Creek to New York, and returned with lime to J. L. Heverin; once a load of wood for M. Vandeusen; a load of grain from Cantwell's Bridge to Smyrna, by contract, for George W. Cummins; and there was also evidence that the owner and master had severally applied to the plaintiff and others for freight; but there was no evidence of any other freighting than above stated.

On an application by the plaintiff, the defendant agreed to take a load of corn from Dover landing to New York, at a certain price for freight. In May, 1848, the "Three Sisters" took the load in, being about 2600 bushels, a part of which (150 bushels) was heated and partly spoiled when put on board, as was known to the plaintiff. The vessel went down to Little Creek bridge shortly after high water, and passing through struck upon a pile not before known to be there. When she arrived at New York, after a long and rough passage, it was found that there was a considerable quantity of water in the hold, by which alone, or the wetting and the bad corn shipped together, the cargo was condemned, and plaintiff suffered a loss on a re-sale of $271 00.

*Mr. D. M. Bates*, for plaintiff.—The defendant is liable, first as a common carrier; second as a private carrier, by reason of negligence. 1. Is he a common carrier? The criterion is the holding the vessel out for common employment. (4 *Harr. Rep.*, 448; *Story Bailm.*, sec. 495-6.) It is not confined to vessels trading on a particular route. What is the mode of proof of this employment? The act of carrying freights generally. And a single act would be sufficient, if done in a general way. Nor is this varied by the fact that the owner carries his own goods as well as others. What is the proof? The "Three Sisters" engaged in carrying for others before she came into Little Creek; after she came there, she carried freights for Heverin, Vandeusen and others, as well as Pennewill; and that Cullen sought freights from plaintiff as well as others.

2. What is the obligation of a common carrier? It is that of an insurer against every thing that could be avoided by human agency; every thing but the act of God, such as lightning, tempest, &c., &c. The running on an unseen and unknown obstruction does not excuse this liability, unless the vessel is forced there by tempest. (*Smith's Cases*, 180; 1 *Term Rep.*, 27; *Story Bailm.*, 528; 3 *Esp. Rep.*, 127; 21 *Wend. Rep.*, 190; 1 *Watts & Serg.*, 285.)

The facts. The vessel run upon a stake at Little Creek bridge, and sprung a leak. That is denied. But if that was not the cause, what was it? The water was in the hold. The corn was spoiled by it. And the defendant has not excused himself for it, by any inevitably necessity. He is, therefore, liable as a public carrier.

2. But he was guilty of negligence, and therefore liable as a private carrier. He either attempted to pass the bridge at an improper time, or with an improper vessel; either of which would be negligence.

*Mr. Smithers*, for defendant.—This is a very important case in reference to the law, as it will settle the character of vessel owners in Delaware, trading as in the present case. If we are common carriers, we must *excuse* ourselves for any accident; if a private carrier, the plaintiff must charge us by proof of negligence or misconduct. What constitutes a common carrier; and what is the evidence of it? It must be of so general a character as to give any one a right to ship goods (in the case of a vessel) without a special contract; and such as makes it unlawful for the carrier to refuse general freights. (2 *Kent's Com.*, 598; *Story Bail.*, 495; *Angel on Carriers*, 68; 2 *Greenl. Ev.* 211; 2 *Kelly's Rep.*, 849.)

The evidence in this case establishes no such case.

2. Is the defendant liable as a *private* carrier? In this character he is liable only for ordinary neglect; which the plaintiff must prove. Ordinary neglect is the want of such care as a prudent man commonly takes of his own goods. (*Ang. on Corp*, § 10, 11; *Ibid*, § 45-6-7.) A private carrier, for hire, is not liable as a common carrier, unless by contract he expressly takes upon himself the duty of a common carrier. (2 *Kelley's Rep.*, 349.) No negligence in this case is proved; the accident which befel this vessel did not arise from any want of skill or prudence. As common carriers, we would be excused only,—1. by the act of God, or inevitable necessity; 2. by act of the public enemies; 3. by the act of the plaintiff himself.

This accident falls within the first class, inevitable necessity. It

is not necessary that this should be entirely apart from human agency; if the proximate cause be a natural accident, not produced by man, such as an obstruction suddenly produced by natural causes. (2 *Kent's Com.*, 589; 3 *Ibid*, 216-17; *Story Bail.*, § 512; 2 *Greenl. Ev.*, § 219; *Angel on Carriers*, 180.) The immediate cause of this accident was a post under the abutment of the bridge, which had been suddenly forced out into a dangerous position, by the settling of the abutments. This was wholly unknown to any of the vessel owners navigating the creek. 2. The defendant, though a common carrier, is excused because of the defective quality of the corn shipped in this case, a portion of which was heated when shipped, and being mixed with the cargo generally, injured and spoiled the whole. (2 *Greenl. Ev.*, § 220; *Angel on Carriers*, § 210.)

*Mr. Layton*, for defendant.

*Mr. Bates* replied.

*By the Court.*—1. The defendant's liability as a common carrier. What constitutes a common carrier is a question of law; whether the defendant comes within that definition, is a question of fact for the jury. A correct definition of common carrier is given in the case of *McHenry* vs. *The Railroad Company*, 4 *Harr. Rep.*, 448.

The jury will decide upon the proof, whether the defendant held himself out to the public as engaged in the business of a common carrier. It is not necessary that his trips should be regular between the same points or places. If engaged in the business of carrying grain for others generally to and from any point, he is liable as a common carrier. But if the defendant kept his vessel for his own use, he would not be liable as a common carrier, even if he chartered or hired his vessel to another by special agreement.

The liability of a common carrier is that of an insurer against every thing except inevitable accident, usually called the act of God; public enemies, and the plaintiff's own default. By the act of God, is meant lightning, tempest, other natural causes, beyond human control. The question in such case, is not one of diligence or negligence, but of human ability. If a vessel strike on a rock or shoal not hitherto known, the master is excused; but if it was known or laid down on any chart, it is an accident that might have been avoided, and the defendant is liable.

The default of the plaintiff. If the injury or loss arose from defective or damaged corn when shipped, the defendant though a common carrier, is excused.

· 2. The defendant's liability as a private carrier. A private carrier is one who, without being engaged in such business as a public employment, undertakes to deliver goods in a particular case, for hire or reward. As such, the defendant was bound to furnish a tight good vessel, suitable to that navigation, and to provide a competent master. This results from his obligation to to use ordinary care and diligence to prevent accident; such care as a prudent man would ordinarily take of his own goods.

It is alledged that on the arrival of this cargo at New York, it was very wet, the vessel having taken much water. If this be so, it will be for the jury to decide where or how this water was taken in. If taken in by reason of running on a hidden post, at the bridge, not known to persons navigating there, the defendant, as a private carrier, would not be liable, if he afterwards used due care and precaution to save the corn from the effects of such accident.

If the water was not taken in by reason of this accident, but was a consequence of the leaky vessel, or the master allowed an improper collection of bilge water by any neglect, or from defectiveness of pumps, the defendant would be liable.

The measure of damages would be the depreciation in price of the corn, by reason of the injury.

Verdict for plaintiff, $63 41.

*Bates* and *Bates, jr.*, for plaintiff.
*Smithers* and *Layton*, for defendant.